MIKE NOVAK, Plaintiff and Respondent, *v.* JOHN NO-
VAK, JR., Executor of the Estate of John Novak, also
known as JOHN F. NOVAK, and JOHN NOVAK, SR., De-
ceased, Defendant and Appellant.

No. 10442

Submitted November 13, 1962. Decided January 3, 1963.

377 P.2d 368.

Risken & Herron, Helena, John H. Risken (argued orally), Helena, for appellant.

Leo J. Kottas, Helena (argued orally), for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a verdict of the jury and judgment thereon in the first judicial district.

From the facts it appears that the deceased John Novak, Sr., was a resident of Lewis and Clark County, Montana, for many years and was engaged in ranching. His wife had predeceased him but as the result of the union there were six sons and four daughters and the litigants in this action are both sons of the deceased.

The deceased passed away on June 11, 1960, and had resided with the plaintiff, Mike Novak, and his wife, Donna, at their home from September 11, 1959, to June 6, 1960. Mr. Novak died in the hospital in Helena, Montana.

On July 18, 1960, John Novak, Jr., was appointed the executor of his father's estate by order of the district court of Lewis and Clark County.

On August 15, 1960, the plaintiff, Mike Novak, filed his creditor's claim in a total amount of $4,006.38. The executor and defendant, John Novak, Jr., denied the claim and on January 12, 1961, the plaintiff filed a complaint seeking $4,006.38.

Upon the trial, the jury returned a verdict in favor of the plaintiff, Mike Novak, in the amount of $2,668.70; judgment was entered on November 1, 1961, in accordance with the verdict. This appeal followed.

The defendant and appellant cites five specifications of error but all revolve around the interpretation of section 93-701-3, R.C.M.1947. So far as pertinent here that section reads:

"The following persons cannot be witnesses: * * *

"3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceed-

ing is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the executor or administrator first introduces evidence thereof, or when it appears to the court that, without the testimony of the witness, injustice will be done.''

The first contention of defendant has to do with permitting the wife of the plaintiff, Donna Novak, to testify to conversations between her husband, and the deceased, John Novak, Sr. Defendant further challenges the admissibility of the evidence of the plaintiff, Mike Novak, after his wife had previously testified as to conversations she overheard between plaintiff and the deceased. At the moment that defendant's counsel objected to the wife testifying the district judge observed:

"Well, we have already had some testimony. The rule about the 'dead man' statute as our courts have interpreted it is this,—that testimony of the person who died is not admissible, unless in the interest of justice it is necessary the testimony be had in order to accomplish a matter that may be considered in the interests of justice. * * * The purpose of that statute, known as the 'dead man' is that if you show a foundation that something has been done—from the testimony or from other persons—another person can testify as to conversations with him —not persons with a direct interest in it but Mr. Nick Pumnea testified as to conversations with the dead man. Under those circumstances unless the court permits the testimony there is no way of ever proving that—the purpose of the statute is that if there is no evidence except that evidence between the dead man the person making th claim—well—The objection will be overruled. * * * I hold that in the interest of justice it is permitted, that

does not preclude you, of course, from disputing what may have occurred.''

This court many years ago in territorial days, in considering the testimony of a wife in the case of Stewart v. Budd, 7 Mont. 573, 581, 19 P. 221, in reference to the then existing so-called ''dead man statute'' stated: ''* * * This section no doubt rendered the plaintiff incompetent to testify in the cause, but the disqualification did not extend to his wife. She was not an adverse party in any sense, nor can it be said that she was disqualified by reason of interest. As the wife of the plaintiff, her interest was too remote and contingent to disqualify her from testifying in the case, assuming that interest works a disqualification, which it does not under the laws of the territory.''

In Ahlquist v. Pinski, 120 Mont. 355, 359, 185 P.2d 499, 501, this court stated:

> ''It is our opinion that the testimony given by Marie Wallenberg was insufficient standing alone to establish plaintiff's claim but that it was sufficient to justify the court in concluding as it did that without plaintiff's testimony injustice would be done. * * * There was therefore no abuse of discretion on the part of the trial court in admitting plaintiff's testimony concerning the conversations with her mother about the making and payment of the loan.''

Where, as here, the trial judge determined in the interest of justice that the testimony of the wife, Donna, was admissible, there is nothing within the statute making her ''interested in the event,'' which means having a ''direct legal or pecuniary interest.'' The wife does not have a direct interest as discussed in Stewart v. Budd, supra, because upon a recovery, no direct right growing out of the marital relationship is also shown to attach to the money recovered, she not being a party to this action.

The appellant earnestly contends that no foundation was

laid which was sufficient to permit the court to allow the plaintiff to testify as to the alleged oral agreement between himself and the deceased.

■ In Johnson v. Mommoth Lode, 136 Mont. 420, 348 P.2d 267, Mr. Chief Justice Harrison clearly and concisely enunciated the rule with reference to section 93-701-3, supra, in the following language:

"The purpose of section 93-701-3, which is known as the *'dead-man's statute'* is '(a) to prevent the living party by reason of the death of the adversary, gaining an undue advantage over the administrator, and (b) to remove the temptation for the commission of perjury by a party in the instances noted being permitted to testify to a communication or transaction as to which in all probability there can be no denial by a living person.' Leffek v. Luedeman, 95 Mont. 457, 463, 27 P.2d 511, 513, 91 A.L.R. 286.

"The rule to be gleaned from the decisions which have dealt with this statute is that before a witness, who is declared to be incompetent by this statute, will be allowed to testify to prevent an injustice, a foundation must be laid by the introduction of other evidence, which shows that in all probability the proponent has a meritorious cause of action. [Citing cases.]"

■ Having held that the testimony of the wife was properly admissible, a sufficient foundation was laid so as to permit the court to exercise its judicial discretion in this case; it had the advantage of observing the witnesses during their testimony and was in a better position than this court to determine whether or not injustice would result if the plaintiff were not permitted to testify. Under these circumstances, this court will not disturb the exercise of the discretionary power of the trial judge.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.